**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**CURTIS LUMBER COMPANY, INC.
D/b/a CALDWELL LUMBER COMPANY**                    **PLAINTIFF**

**v.**                              **2:08CV00107 JMM**

**LOUISIANA PACIFIC CORPORATION**                    **DEFENDANT**

<u>**ORDER**</u>

The following motions are pending in this case: Defendant's Motion to Bifurcate;

Defendant's Motion for Summary Judgment; Plaintiff's Motion for Partial Summary Judgment;

Defendant's Motions to strike portions of Plaintiff's Motion for Partial Summary Judgment and

portions of Plaintiff's Statement of Undisputed Facts.  The parties have responded to the motions

and replied where necessary.

<u>Undisputed Facts</u>

Curtis Lumber Company, Inc. d/b/a Caldwell Lumber Company ("Curtis Lumber") is an

Arkansas corporation which sells building supplies, hardware and lumber in Wynne, Arkansas.

Defendant Louisiana Pacific Corporation ("LP") is a national manufacturer of building products.

In February 2007, LP initiated the SmartSide Builder/Contractor Program (the

"Program") which was a rebate program designed for the purpose of marketing SmartSide siding

and exterior trim products to builders and contractors.  In connection with the Program, LP

distributed a rebate flyer and application which outlined the details, terms, and conditions of the

Program.  The purpose of the rebate was to provide an incentive to encourage builders or

contractors to trial SmartSide products.  To promote the rebate opportunity, LP distributed the

Program documents to its distributors.  The distributors, in turn, passed the documents on to

retail lumber businesses, like Curtis Lumber.  The retail lumber businesses could then inform

their customers, or the end users, of the rebate Program.

Plaintiff's owner, B.J. Curtis ("Curtis"), and its manager, Ron Caldwell ("Caldwell"), received LP's rebate documents from a distributor, Boise Cascade.  After receiving the rebate documents, Caldwell asked Boise Cascade employee, Chuck Gordon, for clarification of the Program qualifications.  According to Chuck Gordon, Plaintiff asked him for clarification on two issues: whether a husband and wife acting as their own general contractor could be considered builders under the rebate Program and whether two brothers who operated separate construction companies would be considered builders under the Program.  Glenn Bazemore of LP fielded the questions from Mr. Gordon and responded yes to both scenarios.  He further stated that LP was happy to have people interested in their Program.

Curtis and Caldwell marketed the SmartSide rebate to their customers.  Eighty-three (83) of Plaintiff's customers submitted an application for a rebate under the Program.  After receiving the applications submitted by Plaintiff's customers, LP became suspicious of the applications. LP sent a letter to the applicants on June 25, 2007.  In the letter, each applicant was requested to submit (a) an address where the SmartSide products were being used, (b) a photograph of the purchased products, and (c) the answers to four short, marketing questions.  LP requested the additional information for the purpose of verifying that the applicants had received and were using the SmartSide products.

LP paid rebates to nine (9) applicants who submitted the information requested in the June 25, 2007 letter.[1]  The remaining seventy-three (73) applicants did not submit the

---

[1]  LP also paid a rebate to Habitat for Humanity, even though it did not submit any additional information, because of LP's corporate relationship with this charitable organization.

information requested by LP in the June 25, 2007 letter.  Curtis and Caldwell admit that they told their customers not to respond to LP's letter of June 25, 2007, or provide the requested information.  Twenty-four (24) of Plaintiff's customers paid for and received the SmartSide products.  Each of these twenty-four customers received a rebate payment from Plaintiff equal to the rebate that Plaintiff contends LP would have paid under the Program.   There were approximately sixteen (16) customers who paid for the products but never received them.  Plaintiff paid each of these customers a refund equal to the amount the customer originally paid Plaintiff for the product.

Plaintiff filed suit against LP on April 25, 2008 in the Circuit Court of Cross County, Arkansas.  LP removed the case to this Court five days later pursuant to 28 U.S.C. § 1441.  Plaintiff alleges that LP violated the Arkansas Deceptive Trade Practices Act, Arkansas Code § 4-88-107, that LP caused Plaintiff damages by negligently misrepresenting the terms and parameters of its rebate Program, and that LP defrauded the Plaintiff by failing to consistently apply either the original or the additional requirements of the rebate applications.  Plaintiff also claims that LP should be estopped from applying additional criteria to the rebate Program.  The Court has diversity jurisdiction over the case because the parties are diverse and the amount in controversy exceeds $75,000.00.

Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there
> is a need for trial -- whether, in other words, there are genuine
> factual issues that properly can be resolved only by a finder of fact
> because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to
> demonstrate, *i.e.*, '[to] point out to the District Court,' that the
> record does not disclose a genuine dispute on a material fact. It is
> enough for the movant to bring up the fact that the record does not
> contain such an issue and to identify that part of the record which
> bears out his assertion. Once this is done, his burden is
> discharged, and, if the record in fact bears out the claim that no
> genuine dispute exists on any material fact, it is then the
> respondent's burden to set forth affirmative evidence, specific
> facts, showing that there is a genuine dispute on that issue. If the
> respondent fails to carry that burden, summary judgment should be
> granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

Discussion of the Law

A.     <u>Real Party in Interest</u>

Rule 17(a) of the Federal Rules of Civil Procedure states, "Every action shall be

4

prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a).  LP argues that

Plaintiff is not the real party in interest, but merely a third party beneficiary of the rebate

Program.  Therefore, Plaintiff does not have standing to sue LP based on LP's refusal to pay

rebates to certain applicants.  LP argues that the applicants who actually participated in the

rebate Program have the right to challenge LP's denials, not Plaintiff.

Plaintiff responds that it has separate and distinct damages from other potential litigants,

*i.e.,* the applicants or Boise Cascade.  Although any evidence presented by the Plaintiff and the

rebate applicants would be similar, Plaintiff contends that its causes of action and damages are

independent of the potential claims of the rebate applicants.  Therefore, Plaintiff argues that it is

the real party in interest in this case.  The Court agrees.

Plaintiff has set forth causes of action for fraud, estoppel, negligent

misrepresentation/constructive fraud and violations of the Arkansas Deceptive Trade Practices

Act based upon LP's actions and the resulting damages allegedly sustained by the Plaintiff, not

the rebate applicants.  The Court finds that Plaintiff is the real party in interest in this case.  LP's

Motion for Summary Judgment on this issue is DENIED.

B.    Fraud

Under Arkansas law, '[t]he elements of fraud are: (1) a false representation of a material

fact; (2) knowledge that the representation is false or that there is insufficient evidence upon

which to make the representation; (3) intent to induce action or inaction in reliance on the

representation; (4) justifiable reliance on the misrepresentation; and (5) damage suffered as a

result of the reliance."  *CEI Engineering Associates, Inc. v. Elder Const. Co.*,  2009 WL 936719

(Ark. App. 2009).  As the Eighth Circuit has recognized, "the reasonableness of a reliance on an

oral representation under Arkansas law is highly dependent on the specific circumstances leading up to the relevant subsequent undertaking." *Yarborough v. DeVilbiss Air Power, Inc.*,  321 F.3d 728, 731 (8th Cir. 2003)(citing *Union Nat'l Bank of Little Rock v. Farmers Bank,* 786 F.2d 881, 887 (8th Cir. 1986)).

Plaintiff claims that LP made three false representations of material fact.  Plaintiff claims that Glenn Bazemore's statements that LP was just "happy to have people interested in LP siding" and the answers to questions regarding who would qualify under the rebate as a builder were false.  Plaintiff alleges that LP's failure to include the "proof of use" requirement in its rebate documents was an omission of material fact.  Finally, Plaintiff cites a letter dated August 2, 2007, written by Douglas Anderson of LP which stated that 36 of Plaintiff's rebate applicants would be paid rebates as a false representation.

LP argues that it cannot be liable to Plaintiff for any alleged false representation because LP never directly communicated with the Plaintiff.  LP states that Plaintiff's questions about the rebate program were presented to Boise Cascade, not LP.  In addition, LP states that Mr. Bazemore's alleged statements regarding builder qualifications and interest in LP siding were true.  Regardless, LP argues that Plaintiff's alleged damages were not caused by Mr. Bazemore's statements.  LP also contends that the rebate documents do not contain any omission or misrepresentation.   LP states that the  "proof of use" request only became an issue because of the suspicious rebate applications of the Plaintiff's customers.  Further, LP argues that Plaintiff has no evidence that LP intended to induce action on the part of Plaintiff or that the Plaintiff's reliance on any representation by LP was justified since Plaintiff was not an applicant for the rebate Program.

The Court finds that Plaintiff has failed to prove that Mr. Bazemore made any material false statements or misrepresentations of fact.  Taking Plaintiff's allegations as true, Bazemore affirmatively stated a husband and wife acting as their own general contractor could be considered builders under the rebate program and that two brothers who operated separate construction companies would be considered builders under the program.  He also stated that LP was just happy to have people interested in their program.  Bazemore's alleged statements in response to inquiries from Boise Cascade were not commitments to pay rebates to all of Plaintiff's customers.   These were answers to hypothetical questions.  "Projections of future events or conduct cannot support a fraud claim as a matter of law." *Southeastern Distributing Co. v. Miller Brewing Co.*,  575, 237 S.W.3d 63, 74 (Ark. 2006).

The Court also does not find Mr. Anderson's August 2nd letter with regard to the 36 applicants who would be receiving the rebate to be material.  The letter was sent to Plaintiff after all of its customers had submitted their rebate applications to LP and after LP had requested proof of use information from the applicants.  Therefore, the letter cannot be a representation by LP that induced Plaintiff to promote the rebate or a basis for Plaintiff's damages.

The Court finds that there is enough evidence regarding LP's alleged omission of terms in the Program documents to support Plaintiff's fraud theory and to withstand Defendant's motion for summary judgment.  There is a factual dispute as to whether LP's omission of the "proof of use" requirement in the rebate documents was a material omission, whether it was intentionally omitted by LP with the desire to induce Plaintiff to promote the rebate to its customers in reliance on the omission, and whether Plaintiff's damages were a result of the omission.  Defendant's Motion for Summary Judgment is DENIED as to this theory of fraud.

C.     Negligent Misrepresentation/Constructive Fraud

In the Complaint, Plaintiff alleges that LP committed the tort of negligent misrepresentation. Plaintiff alleges that LP made representations to Plaintiff through Boise Cascade that the LP Program would apply to Curtis Lumber's customers. (Complaint at p. 9). It further states that Curtis Lumber reasonably relied upon that representation in promoting the Program to its customers and ordering LP products and that LP was in error in its representation. The Complaint states that the error constitutes a negligent misrepresentation which caused Plaintiff to suffer damages. *Id.*

LP argues that Arkansas does not recognize the tort of negligent misrepresentation. *South County, Inc. v. First Western Loan Co.,* 871 S.W.2d 325, 326 (Ark. 1994)("We decline to recognize the tort of negligent misrepresentation."). In response, Plaintiff asks the Court to look to the substance of the claims presented and not the labels attached to those claims in order to find a constructive fraud claim here.

Regardless of the label attached to Cause Two of the Complaint, it does not survive Defendant's motion for summary judgment. As stated, the Court finds that Plaintiff has failed to prove that Mr. Bazemore made any material false statements or misrepresentations of fact to Plaintiff through Boise Cascade. Therefore, Plaintiff cannot state a claim for constructive fraud or negligent misrepresentation. Defendant's Motion for Summary Judgment of Plaintiff's negligent misrepresentation/constructive fraud claim is GRANTED.

D.     Arkansas Deceptive Trade Practices Act

To be liable under the Arkansas Deceptive Trade Practices Act, LP must have "knowingly" engaged in "deceptive and unconscionable trade practices." Ark. Code Ann. § 4-

88-107(a).  The Act imposes a causation element by requiring, "actual damage or injury as a result of the offense or violation."  Ark. Code Ann. § 4-88-113(f).  Plaintiff claims that LP has breached the provisions of the ADTPA by (1) offering a product for sale using undisclosed conditions and (2) failing to administer the rebate program pursuant to the terms advertised to the public.  Similar to the fraud allegations against LP, the Court finds that Plaintiff has produced sufficient evidence that LP failed to include the "proof of use" terms in the Program documents to withstand the Defendant's motion for summary judgment.  There are questions of fact as to whether LP knowingly omitted the proof of use term from the Program documents in violation of the ADTPA and whether Plaintiff sustained actual damage or injury as a result of the omission.

LP argues that Plaintiff should not be able to include allegations that LP violated Sections 4-88-107(a)(5)(B) or 4-88-108 at this stage in the litigation because Plaintiff did not include those specific allegations in the Complaint.  "Only limited circumstances justify a district court's refusal to grant leave to amend pleadings: Undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party."  *Costello, Porter, Hill, Heisterkamp & Bushnell v. Providers Fidelity Life Ins. Co.,* 958 F.2d 836, 839 (8th Cir. 1992)(internal citation omitted).  The Court finds none of these limited circumstances exist here.  Sections 4-88-107(a)(5)(B) and 4-88-108 merely restate the theories pled by the Plaintiff under Sections 4-88-107(a)(1), (a)(3) and (a)(10).  Thus, LP would not be unfairly prejudiced by the amendment of the Complaint to include alleged violations of Sections 4-88-107(a)(5)(B) or 4-88-108.

    E.    <u>Estoppel</u>

Cause Three of Plaintiff's Complaint states a cause of action for equitable estoppel.

However in Plaintiff's Memorandum of Law in Support of the Motion for Partial Summary Judgment, Plaintiff's asks the Court to consider this claim as one for promissory estoppel in the alternative.  (Pl's Brief, at p. 23).

> Promissory estoppel is a form of equitable estoppel, and thus, many of the principles which apply to the equitable estoppel doctrine likewise apply to the promissory estoppel doctrine. . . .  Promissory estoppel was developed to differentiate a promise of future conduct from conduct taking place in the past or the present. . . . [R]eliance based on an action that has already occurred– was described as equitable estoppel.

Howard W. Brill, Law of Damages, § 17:14 (5th ed. 2004).  The Arkansas Supreme Court has held that "the party asserting estoppel must prove it strictly, there must be certainty to every intent, the facts constituting it must not be taken by argument or inference, and nothing can be supplied by intendment."  *K.C. Properties of N.W. Arkansas, Inc. v. Lowell Inv. Partners, LLC,* 280 S.W.3d 1, 14 (Ark. 2008)(citing Ward v. Worthen Bank & Trust Co., 284 Ark. 355, 681 S.W.2d 365 (1985)).  The Supreme Court has also stated that a party asserting estoppel may prove "he relied on some act or *failure to act* by the other party."  *Id.*(citing *Peek v. Simmons First Nat'l Bank*, 832 S.W.2d 458 (Ark. 1992)).  Reliance and reasonableness are questions for the trier of fact.  *Id.*

Again, LP contends that Plaintiff should not be allowed to add a claim for promissory estoppel to its Complaint by way of the Motion for Partial Summary Judgment.  The Court finds that LP would not be prejudiced by the amendment of the Complaint to include promissory estoppel as opposed to equitable estoppel.  Further, the Court finds that Plaintiff has presented sufficient evidence of LP's omission of material terms of the Program to support a claim for promissory estoppel.    Defendant's Motion for Summary Judgment as to Plaintiff's claim for estoppel is DENIED.

F.    Damages

LP argues that the Plaintiff cannot recover the money Plaintiff paid to it's customers because the payments were voluntary.  Under the voluntary payment rule, "[w]hen one pays money on demand that is not legally enforceable, the payment is deemed voluntary.  Absent fraud, duress, mistake of fact, coercion, or extortion, voluntary payments cannot be recovered." *Douglas v. Adams Trucking Co., Inc.,* 46 S.W.3d 512, 518 (Ark. 2001)(internal citations omitted).

Plaintiff claims that it paid rebates and refunds to its customers because it was under economic duress.  Plaintiff explains, and provides evidence, that failure to make the payments to its customers would have resulted in Plaintiff losing the customer's future business.  "[D]uress exists when there is some 'actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another from which the latter has no other means of immediate relief than by making the payment.'" *Bishop v. Bishop*, 250 S.W.3d 570, 573 (Ark. App. 2007)(quoting *Vick v. Shinn,* 4 S.W. 60, 61 (Ark. 1887)).  As an exception to the voluntary payment rule, duress would only apply here if LP had exerted economic duress over the Plaintiff to force the Plaintiff to pay the rebates to LP.   In other words, the exception applies where the payee exerts economic duress over the payor to make the payments.  Here, the economic duress is not between the parties to the case, LP and Curtis Lumber, it is between Curtis Lumber and its customers.  Therefore, the economic duress exception does not apply.  Plaintiff cannot recover the rebates or refunds paid to its customers from LP.  Those payments, although arguably prudent in a business sense, were voluntary.  Plaintiff was under no legal obligation to make those payments.  "One who pays without legal

obligation is not, in general, entitled to claim the benefit of his voluntary payment." *Guffey v. Kim Billings Counts & Office of Child Support Enforcement*, 2009 WL 613539(Ark. App. 2009).

Plaintiff further argues that LP's alleged fraud forced Plaintiff into a position where Plaintiff had to pay requested rebates and refunds to its customers.  Again, the Court finds that the fraud exception does not apply to the facts of this case.  For the fraud exception to apply, the payee must fraudulently induce the payor to make the payments to the payee.

LP argues that Plaintiff has not provided evidence that it sustained actual damages as a result of any action by LP.  The Court finds that LP has provided enough evidence of lost profits and increased costs to withstand Defendant's summary judgment motion on this issue.  There remains a question of fact as to whether LP's actions were the proximate cause of Plaintiff's alleged damages.

Plaintiff also requests an award of punitive damages against LP.  Punitive damages are "the penalty which the law fixes for conduct which is malicious, wanton, in violation of a relationship of trust or confidence, or which is done with deliberate intent to injure another." *Interstate Freeway Services, Inc. v. Houser,* 835 S.W.2d 872, 876 (Ark. 1992).  The Court finds no evidence in the record to support a finding for punitive damages.  Therefore, Defendant's motion for summary judgment as to Plaintiff's punitive damages claim is GRANTED.

<u>Conclusion</u>

For the reasons set forth above, Defendant's Motion for Summary Judgment (Docket # 30) is DENIED in part and GRANTED in part.  Defendant's Motion to Bifurcate (Docket # 28) is MOOT.  Plaintiff's Motion for Partial Summary Judgment (Docket # 33) is DENIED. Defendant's Motions to Strike (Docket # 36 and # 38) are DENIED.

IT IS SO ORDERED this 26th day of May 2009.

_____
James M. Moody
United States District Judge